MILLS v. COMMON COUNCIL OF CITY OF LUDINGTON.

Intoxicating Liquors—Licenses—Mandamus to Compel Issu-
ance—Ordinances—Municipal Corporations.

Mandamus will not issue to compel the common council of a
city, which has, by an ordinance limiting the saloon district,
prohibited the establishment of a saloon in the relator's loca-
tion, to approve his bond and issue a license for the continu-
ation of his business, upon a counter showing by the munici-
pality that his saloon had been previously conducted in a dis-
reputable manner and that the relator was of bad character.
*Sherlock* v. *Stuart*, 96 Mich. 193 (55 N. W. 845, 21 L. R. A.
580).

Mandamus by William H. Mills to compel the common
council of the city of Ludington to approve relator's bond
for the sale of intoxicating liquor.  Submitted July 6, 1909.
(Calendar No. 23,488.)  Writ denied November 5, 1909.

*L. E. Carroll*, for relator.

*Henry C. Hutton* (*Michael B. Danaher*, of counsel),
for respondent.

Moore, J.  This is an application for a mandamus to
compel respondent to approve the bond of the relator to
continue in the retail liquor business at No. 111 West Lud-
ington avenue, in the city of Ludington.  In April, 1909,
the respondent amended the ordinances of the said city
with respect to the places where the retail liquor business
might be carried on, authorizing the conduct of such busi-
ness at 18 different places, but not at No. 111 West Lud-
ington avenue.

The ordinance contains eight different sections and leg-
islates in relation to three classes of saloons.  We quote a
part of section 2:

"Section 2. The locations within the city limits where

saloons are herein classified may be conducted and maintained on payment of a license fee as hereinafter provided, are as follows: First class: Saloons in which the usual and unrestricted variety of drinks sold in the ordinary liquor saloon is dispensed by the glass and where cigars or tobacco are sold and used and miscellaneous crowds are allowed to congregate therein, and lounge about and smoke, eat or drink, and sit at tables, and play games or otherwise idly spend their time, may be licensed to carry on their business only at the following places within the limits of the city of Ludington."

Then follow the places where these saloons may be maintained, and then "on payment of a license fee of $100 annually as hereinafter provided." Saloons of the second class were required to pay a license fee of $10 annually. Saloons of the third class were required to pay an annual fee of $10 and $5 additional for each pool or billiard table or tenpin alley kept in connection therewith.

The return of the respondent is very long. Among other things, it contains the following:

"And the respondent shows to the court that in enacting the amendment to said ordinance it did not act unreasonably, unfair, capricious, or without warrant of fact or law, and denies that it arbitrarily and unjustly rejected the petitioner's bond, and denies that in enacting such amendment it greatly injured and damnified the petitioner, or that in so acting it designed to injure or damnify the petitioner, but says that the amendment to the ordinance and its subsequent action in relation to the bond and license was had and taken in good faith and in the interest of public morals and order, and to prevent violations of the law and for convenience in enforcing the liquor laws. * * *

"Respondent denies that the petitioner has always been a law-abiding citizen of said city, as alleged in said petition, or that he is a man of good reputation, and denies that said petitioner has conducted the liquor business in said city in a proper manner. But, on the contrary, respondent says that the petitioner has been a violator of the law; that during the past two years, and during the time when he has been engaged in the liquor business in said

building, he has been twice arrested for violations of the liquor law, on one of which occasions he was convicted and paid a fine on a plea of guilty.  *  *  *

"The respondent, further answering said petition, denies that there are no side rooms, stalls, or partitions in said building so used as a saloon, or that the rear part of the same can be readily seen from the street, but says that the view is obstructed by screens in front thereof, and that there is built into the side of said building, and in the back part thereof, very large, high, cushioned seats, facing each other, in the nature of stalls, except that the entrance thereto is open; that any one seated therein cannot be seen, unless the observer should stand near the entrance to the same;  *  *  *  that the building in which the saloon of the petitioner is located is a double building, and that the petitioner is the proprietor of a billiard and pool room, in which there is a bowling alley, and said business is carried on in the room or part of the building just east of and adjoining the petitioner's saloon; that in said billiard room there is also a cigar stand;  *  *  * that this billiard and pool room and bowling alley is resorted to and frequented by minors and school children, and that said room is open Sundays and on legal holidays; that there is a back door to the billiard room, convenient to the back door of the saloon, both of which doors open on an alley; that the upstairs or second floor of the building is run as a rooming house for men, advertised by the petitioner as a 'stag hotel,' one of the rooms of which the petitioner was in the habit of using for saloon purposes in the sale of intoxicating liquors on legal holidays and after hours; that there is both a back and front entrance by stairs leading to the second floor, making the same easy of access from the street and alley.

"Respondent shows that this condition of the building made the violation of the liquor law easy, and hard to detect, and this respondent shows, upon information and belief, that intoxicating liquors were by the petitioner frequently taken from his saloon below and sold in his rooms above, contrary to law, and that such sales were made upon legal holidays and on Sundays in violation of law;  *  *  *  that the billiard and pool room of the petitioner is frequented by young men on legal holidays and after hours, to wit, after the hour when by law the saloon of the petitioner is obliged to be closed, and that the proximity of the back door of the billiard room to the back

door of the saloon renders it easy to gain an entrance to the saloon after hours; * * * that upon these considerations, and because there were too many saloons in the vicinity of this location, and because a saloon in such location was a nuisance, it was considered that the premises of the petitioner was not a fit place in which to lodge a business so destructive to the public morals of the city, and in which the law might be so easily and was so frequently violated, and thereupon the ordinance of the city was amended, prescribing locations suitable for saloons in said city, which did not include the location of relator and certain other locations where saloons had been kept."

It is the claim of relator that the action of the respondent is invalid, under *Kenaston* v. *Riker*, 146 Mich. 163 (109 N. W. 278), and *Fitzpatrick* v. *Weaver*, 147 Mich. 382 (111 N. W. 163). An examination of those cases will show they are easily distinguishable. The case before us is within the principles announced in *Sherlock* v. *Stuart*, 96 Mich. 193 (55 N. W. 845, 21 L. R. A. 580). The action of the respondent was clearly within its powers.

The writ of mandamus is denied, with costs.

BLAIR, C. J., and GRANT, McALVAY, and BROOKE, JJ., concurred.