[No. 6040.]

HEAD CAMP WOODMEN OF THE WORLD ET AL. v. SLOSS.

1. Insurance—Policy—Construction—All life insurance contracts receive the same construction, and are subject to the same statutory regulations and limitations, unless expressly exempted.—(180, 181)

——An indemnity contract denominated a "BENEFIT CERTIFICATE," evidencing the obligation of the party issuing it to pay to a sister of a party named therein, upon his death, a sum of money, held to be a policy of life insurance.—(180)

2. ——Suicide—The statute (Laws 1903, c. 119) is directed

(12)

against suicide as a defense to an action on a life policy in all cases, without regard to the character or class of the insurer. —(181)

3. ——Suicide Contemplated by Insured in Taking the Policy—The judgment in this case does not exclude the defense in a case where the insured contemplated suicide at the time of taking out the policy. As to such a case, the question is still an open one.—Gabbert, J.—(185)

4. Statutes Construed—A statute providing that "corporations not for pecuniary profit, founded under this act * * * intended to benefit the widows, orphans, heirs and devisees of deceased members thereof and where the members receive no money as profit, or otherwise, shall not be deemed insurance companies" (Mills' Stats., § 638; Rev. Stats., § 1015) has no application to a corporation not organized under this statute, or one insuring those not of the classes named therein.—(182)

Mills' Stats., § 2238, and 3 Mills' Stats., § 2229, simply recognize the right of benevolent societies to issue indemnity contracts or contracts of insurance, on the assessment plan, without organizing under the statutes for the organization of insurance companies for profit. They have not the effect to except them from the statute prohibiting suicide as a defense to an action on the contract (Laws 1903, c. 119).—(183)

5. Constitutional Law—Suicide as a Defense to a Policy of Life Insurance—Chapter 119, Laws 1903 (Rev. Stats., § 3142) is a valid exercise of legislative power.—(183, 184)

6. Contract — Validity — Conflict with Statute — A contract provision in violation of an express statute announcing the public policy of the state, is void. The statute cannot be waived or set aside by private agreement.—(184)

*Appeal from Mesa District Court*—Hon. Theron Stevens, Judge.

Messrs. Carnahan & Van Hoorebeke and Mr. B. M. Carr for appellant.

Messrs. Wheeler & Weiser and Mr. R. D. Thompson for appellee.

Mr. Justice Bailey delivered the opinion of the court:

The plaintiff's cause of action is upon an indemnity contract, of date January 2, 1904, de-

nominated a "Benefit Certificate," issued by the defendant association to one William J. Bunting, payable upon his death to Mary Sloss, a sister, the beneficiary therein.

Two separate, special defenses were interposed. One, that the deceased came to his death by suicide within one year after the issuance of the contract, which carries a provision to the effect that if the insured so dies within such period, no benefit whatever shall be paid thereunder; and the other, that the statute of the state of Colorado, in force July 11, 1903, upon which plaintiff relies to recover, despite the foregoing provision of the contract, known as the suicide statute, which in part is as follows: "From and after the passage of this act, the suicide of a policyholder of any life insurance company doing business in this state shall not be a defense against the payment of a life insurance policy, whether said suicide was voluntary or involuntary, and whether said policyholder was sane or insane," is unconstitutional and void, as in violation and contravention of the provisions of the Fourteenth Amendment of the Constitution of the United States; because, it is claimed, it infringes and restricts the personal right of a citizen to make a contract for himself, or for the benefit of others, which is neither immoral nor against public policy.

The plaintiff interposed general demurrers to these defenses, which were sustained. The defendants elected to stand by their case as made. By consent, trial was to the court, and upon proofs judgment was for the plaintiff, for eleven hundred dollars, the full amount of indemnity, to review which defendants bring the case here on appeal.

The only questions fairly raised are: First, Is the contract sued upon a policy of life insurance, and, in the absence of allegations and proof of fraud

in its procurement, subject to the provision of our suicide statute, since it was issued by a fraternal or mutual association not for profit? Second, Is the statute, for the reasons urged, or for any reason, unconstitutional?

1. This court, speaking through Mr. Justice Hayt, in *Chartrand v. Brace,* 16 Colo. 19, involving a contest over the proceeds of a contract of like character with the one in suit, said:

"The certificate is, in legal contemplation, a policy of life insurance, and to be construed as such. That the amount can only be collected by assessment upon members of the association after due notice of death, and the payment of such assessment is purely voluntary, can make no difference. The association, so far as it is engaged in the business of life insurance, must be treated in law as a mutual life insurance company. The certificate is to be regarded as a written contract, and, so far as it goes, it is the measure of the rights of all parties."

And again in *Supreme Lodge Knights of Honor v. Davis,* reported in 26 Colo. at page 257, opinion by Mr. Justice Gabbert, this court said:

"In as far as the insurance feature of the organization is concerned, it is, in effect, a mutual life insurance company, and the general rules governing associations of that character control it in the transaction of this branch of its business."

That contracts like the one in suit are life insurance policies is, in this jurisdiction, settled beyond recall, and the courts, with great uniformity, have so treated them. Rightfully so because there is no essential difference between the provisions of this contract and those of the ordinary life insurance policy of regular or old-line companies. That all life insurance contracts should receive the same construction, and be subject to the same statutory

regulation and limitation, unless expressly exempted, must be conceded. The statute in question provides that the act of suicide shall not be a defense to the payment of a life insurance policy, and was directed against such defense in all cases, without regard to the character or class of the company putting forth the contract.

It being once determined that the contract sued upon is in fact a life insurance policy, then the conclusion is irresistible that the bare fact of suicide may not, in the face of the statute, be legally asserted against a suit to recover upon it. For the purpose of its insurance feature the defendant company was and is as much a life insurance company as an old-line or regular company, and its contracts of indemnity are just as much life insurance policies as are those of any other company. The statute is clear and specific, and is capable of but one rational construction, namely, that it was the intent and purpose of the legislature to prevent all companies, of whatsoever kind or character, issuing life insurance contracts, from escaping payment thereon in the event of death, simply on the ground that the insured committed suicide. There is no exception in behalf of any particular kind of company, either expressed or implied, and manifestly none was intended. No good reason appears for reading into the statute such a limitation or exemption.

At the time this contract was written, and at the time of loss, this statute was the last expression of the legislature upon the subject, and is controlling as against any prior, if there be such, and we know of none, conflicting legislative expression in reference thereto. The several statutory provisions, relied upon by defendants to take this contract out of this statute, were all in force at the time of the former decisions of this court, and they determined,

in effect, that notwithstanding them, such a contract is a life insurance policy. These provisions have, and can have, no reference to, or bearing upon, the suicide statute, which is a separate, subsequent, independent and complete enactment, in and of itself, and in no sense amendatory of any previous legislative enactment. Neither do they create a limitation upon its application, since by its terms it reaches all insurance policies of all companies, without reference to their character, whether mutual organizations on the assessment plan, or otherwise.

That part of section 638, 1 Mills' Ann. Stats., with which a consideration of this case has to do, reads as follows:

"Corporations, associations and societies, not for pecuniary profit, founded under this act, shall be bodies corporate and politic by the name stated in such certificate; * * * associations and societies which are intended to benefit the widows, orphans, heirs, and devisees of deceased members thereof, and where the members shall receive no money as profit or otherwise, shall not be deemed insurance companies."

This statute is specifically for the benefit of corporations, associations and societies, not for pecuniary profit, founded under this act. The record discloses that the defendant association is not a corporation, association or society so founded; it was sued as a voluntary association and defended as such, and does not come within the purview of this section and can claim no benefit or exemption from it. Again, by the terms of this section, it is only associations and societies which are intended to benefit exclusively the widows, orphans, heirs and devisees of deceased members which are exempted from being deemed insurance companies. This certificate, by its express terms, is widely extended in

its benefits; they are not limited to fit the terms of this provision. The beneficiary may be any relative, or dependent of or upon the assured member, even an entire stranger. It needs no argument to demonstrate that this contract does not fall within the limitations, or conform to the requirements, of this section.

Neither is there anything in section 2229 of 3 Mills', nor in section 2238 of 1 Mills', which, by any possible intendment, can be held to take the contracts of the defendant association out of the operation of the suicide statute. These provisions simply recognize the right of fraternal and benevolent societies, of like character with the defendant, to issue indemnity or contracts of insurance on the assessment plan, without requiring them to organize under the statutes regulating the organization of insurance companies for profit. Under these provisions the defendant company had the unquestioned right to issue contracts of insurance, and such contracts, when issued, by whatever name designated, are in contemplation of law, and in fact, policies of life insurance, and thus subject to the provisions of this statute. The statute itself does not exempt them, nor does any other provision of our law, to which our attention has been called, do so.

2. Upon the question of the constitutionality of the statute, it is sufficient to say that its enactment was a legitimate exercise of power by the state legislature. There is no reason suggested upon which to base a contrary view. No authority has been cited, and we have been unable to find any, in conflict with this conclusion. It was the province of the state, through its legislature, to adopt such a policy touching this matter as it deemed best, provided it did not, in so doing, come in conflict with the constitution of the state or of the United States.

There is no such conflict here. The legislative will, within the limits stated, must be respected. If an insurance company does business at all within the state, it must do so subject to such valid regulations as the state may choose to adopt. By this statute the state, through the proper authority, has declared it to be against public policy to permit insurance companies to contract against the payment of their policies, in the event of loss, because the insured came to his death by suicide. The contract in suit was made subsequent to the passage of this act, and upon full notice as to the policy of the state in that behalf. The propriety and wisdom of the enactment was for the legislature alone, and is not properly for consideration or review here. The provision in this contract making suicide a defense against payment, being against the policy of the state, as declared in the statute, is, for that reason, a nullity. The very object of the statute is to prohibit such stipulations. It can neither be waived nor abrogated by any plan or device whatever. The legislative will, when expressed in a peremptory statute, is paramount and controlling, and cannot be set aside by the private agreement of the parties.

We cite, in addition to the cases from our own state, as bearing generally upon the conclusions here reached and approving them, the following: *Knights Templar & Masons' Life Indemnity Co. v. Berry et al.*, 46 Fed. 441; *Knights Templar & Masons' Life Indemnity Co. v. Berry et al.*, 50 Fed. 511; Note to *Penn Mutual Life Ins. Co. v. Mechanics' Savings Bank & Trust Co.*, 38 L. R. A. 55, containing under paragraph VIII summary of authorities; *Commonwealth v. Wetherbee*, 105 Mass. 149; 2 May on Insurance (4th ed.), § 550a, and authorities there cited; *Daniher v. Grand Lodge A. O. U. W.*, 10 Utah 111; *Home Forum Benefit Order v. Jones*, 5 Okla. 598;

*Baltzell v. Modern Woodmen of America,* 98 Mo. App. 153; *Keller v. Travelers' Ins. Co.,* 58 Mo. App. 557; *Logan v. Fidelity Company,* 146 Mo. 114; and *Whitfield ex rel. Hadley v. Ætna Life Ins. Co.,* 205 U. S. 489.

The court having properly sustained the demurrers to the two special defenses, and having, upon full hearing and ample proof, entered the correct judgment, it is affirmed. *Affirmed.*

Decision *en banc.*

---

Mr. JUSTICE GABBERT, concurring specially:

I concur in the judgment, and, also, in the conclusion, that under the defense and the facts of this case, the statute in question is valid, because of the decision of the supreme court of the United States in *Whitfield v. Ætna Life Insurance Co.,* 205 U. S. 489, to the effect that the Missouri statute does not conflict with the federal constitution. There is, however, a marked difference between the Missouri statute and our own. The former provides that suicide shall be a defense if it appears that the insured contemplated suicide at the time he made application for his policy, while our statute is silent upon that subject. This difference might be good ground for declaring our statute invalid, for the reason that, literally, it takes away the defense of suicide altogether, no matter what the circumstances might be; but that question has not been argued by counsel. Should, however, a case be presented where the defense interposed was that the insured contemplated suicide when he took out his policy, the holding in the case at bar would not foreclose a consideration of that proposition. Neither would it foreclose the other question suggested if presented in a future case.