**STOCKYARDS NAT. BANK OF SOUTH OMAHA v. BAUMAN, County Treasurer, et al.**

(Circuit Court of Appeals, Eighth Circuit. April 27, 1925.)

No. 6829.

**1. Courts ⬥366(1)—Federal courts governed by local law as to validity of state statute.**

On the question whether a state statute is a valid law and in force, the federal courts are bound by the decision of the highest court of the state.

**2. Constitutional law ⬥38—Statute adjudged unconstitutional not revived by removal of ground of invalidity.**

Under the law of Nebraska, a state statute, adjudged unconstitutional by the Supreme Court of the state as in violation of the state Constitution, does not become operative on the subsequent removal of the ground on which such decision was based.

Appeal from the District Court of the United States for the District of Nebraska; Joseph W. Woodrough, Judge.

Suit in equity by the Stockyards National Bank of South Omaha against Otto J. Bauman, personally and as Treasurer of Douglas County, Neb., and others. Decree for defendants, and complainant appeals. Reversed, with instructions.

Edgar M. Morsman, Jr., of Omaha, Neb., for appellant.

George W. Ayres, of Lincoln, Neb. (O. S. Spillman, of Pierce, Neb., Hugh La Master, of Tecumseh, Neb., and W. W. Slabaugh, of Omaha, Neb., on the brief), for appellees.

Before STONE and LEWIS, Circuit Judges, and SCOTT, District Judge.

STONE, Circuit Judge. This is a bill by a national bank against certain taxing officials of the state of Nebraska. The basis of the bill is that the officials are exercising and claiming the right to tax the capital stock of the bank at the full mill rate levied upon real estate instead of 25 per cent. of that rate. The controversy presents but one question and that is one of law, to wit, whether section 5887, Compiled Statutes of Nebraska 1922 (section 4 of article 8, chapter 133, Session Laws 1921), is a valid existent provision of law governing national bank taxa-

tion of this character of property. There is no question that this section was expressly intended to govern the taxation of shares of capital stock in national banks, but the real question is whether this section is now in force, and, if in force, whether legally applicable to national banks.

Section 5219, Revised Statutes of the United States (Comp. St. § 9784), prior to March, 1923, permitted a state to tax the shares of national banks provided the tax when levied should be at no greater rate than that imposed upon other moneyed capital. When the state Legislature enacted this taxing statute, it was promptly attacked both by the national banks, through a bill filed in the United States court, and by the state banks, through a bill filed in the state court. The suit in the federal court resulted in the state statute being held violative of section 5219 of the Revised Statutes because section 4 required a rate on the bank stocks equal to the full rate on real estate while it required, under section 1 of the same act, taxation of other moneyed capital at only 25 per cent. of that rate. In the state court suit, the state Supreme Court held that section 4 was violative of section 5219 of the Revised Statutes of the United States and therefore could not be applied to national banks and that to apply it to state banks alone would result in the taxation of state bank shares at the full mill rate while national bank shares were taxed at only 25 per cent. thereof and that this discrimination rendered the act unconstitutional under the state Constitution. The result of these two suits was that section 4 was declared invalid and all bank stock was thereafter taxed, under section 1, at 25 per cent. of the full mill rate applied to real estate. Thereafter, in March, 1923, Congress amended section 5219 (42 Stat. 1499). That portion of the amendment material to be considered here qualified the requirement that national bank stocks should not be taxed at a greater rate than other moneyed capital in the hands of individual citizens by the expression "coming into competition with the business of national banks: Provided, that bonds, notes, or other evidences of indebtedness in the hands of individual citizens not employed or engaged in the banking or investment business and representing merely personal investment not made in competition with such business, shall not be deemed moneyed capital within the meaning of this section." Without any subsequent legislative action by the state, the taxing officials sought thereafter to apply section 4 to the taxation of national bank shares on the theory that the above amendment had removed the obstruction to such taxation. Several points are here urged but, in our view of the law, it is necessary to consider only one.

[1] It is urged by appellant that when the state Supreme Court declared section 4 unconstitutional, that legal provision was as though never enacted and could have no force thereafter; that if the state had the power and desired, after the above amendment to the national statute, to employ the rate of taxation set forth in section 4, it must re-enact that section at a time when it had power validly to do so. The answering position of appellees is that section 4 was merely in suspension during the time it could not be legally enforced because of section 5219 and that whenever Congress should remove that obstruction, the section would automatically operate and that such obstruction was removed by the above amendment to section 5219.

Questions of this character when applied to state statutes are governed by the local law. The rule and the reason therefor are well set forth in Norton v. Shelby County, 118 U. S. 425, 6 S. Ct. 1121, 30 L. Ed. 178, where the court, at page 440, said:

"On many subjects the decisions of the courts of a state are merely advisory, to be followed or disregarded, according as they contain true or erroneous expositions of the law, as those of a foreign tribunal are treated. But on many subjects they must necessarily be conclusive; such as relate to the existence of her subordinate tribunals; the eligibility and election or appointment of their officers; and the passage of her laws. No federal court should refuse to accept such decisions as expressing on these subjects the law of the state. If, for instance, the Supreme Court of a state should hold that an act appearing on her statute book was never passed and never became a law, the federal courts could not disregard the decision and declare that it was a law, and enforce it as such."

This rule has been specifically applied in cases involving state taxing statutes. Stutsman County v. Wallace, 142 U. S. 293, 306, 12 S. Ct. 227, 35 L. Ed. 1018.

[2] What then is the rule in Nebraska concerning the status of a state statute which has been declared invalid by the Supreme Court of that state, in so far as its being thereafter operative? This precise question, as applied to the very statute now involved, is answered by the Supreme Court of Nebraska in the case of Central National Bank of Lincoln v. Sutherland (Neb.) 202 N. W.

428, decided February 17, 1925. Pendency of the Sutherland Case in the Supreme Court of Nebraska was called to our attention at the argument of this case and the above decision has been handed down since submission of this case. That opinion sustains fully the above position taken by appellant. It rules this case in its favor. To the same general effect is Whetstone v. Slonaker, 110 Neb. 343, 193 N. W. 749. Also see Seneca Mining Co. v. Osmun, Secretary of State, 82 Mich. 573, 47 N. W. 25, 9 L. R. A. 770; State v. Tufly, 20 Nev. 427, 22 P. 1054, 19 Am. St. Rep. 374; Ex parte Bockhorn, 62 Tex. Cr. R. 651, 138 S. W. 707, for similar view in other jurisdictions.

The decree should be and is reversed with instructions to grant an injunction forbidding the levy upon these shares of stock at more than 25 per cent. of the mill rate levied on real estate.